at all, argument not to exceed 15 minutes per side. Mr. Gonzales-Pagan, you may proceed. Good morning. Good morning, your honors. I may please the court, Omar Gonzales-Pagan, and I represent the plaintiff appellants in this case, Kayla Gore, Jamie Combs, LG, and KN. Your honors, birth certificates are critical and foundational identity documents. They are not mere records of historical facts or observations. The state's own vital statistics handbook recognizes that they're used to prove identity in many circumstances, including enrolling in school, seeking employment, or seeking access to government services. At the outset, it is important to understand what this case is about. This case pertains to one specific document, the copy of the birth certificate that is furnished to every person born in Tennessee for purposes of identification. It is not about altering the underlying original birth record or the state's vital statistics file for a person. I'm sorry to interrupt. Can I ask you just a kind of a logistics question? In order to get the relief you want, do you need to win on the substantive due process claim? In other words, let's assume you only went on the equal protection claim. Do you ultimately not get the relief you want then because they just scratch it out and change it? Is that right? Am I thinking about it right? You can correct me if I'm not. Your honor, I would argue that it would be... I would argue that there would still be an equal protection violation with regards to the scratch out procedure in the sense that it still provides information about sex not related to identity only for... Is it wrong that they do that with everything else? Not with everything else, your honor. For example, when it comes to... How do they do adoptive parents, for example? They actually make the change and they maintain a sealed copy of the original with that information. How about change name? Your honor, I'm not sure if they use a strike out for the name or not. I believe we've seen certificates that had them both with the strike out or without it. But ultimately, even if that were the case that it doesn't affect... The equal protection claim doesn't affect the strike out procedure, which we would maintain that it does, it still would provide some relief in that it would allow transgender people to present an identity document that correctly identifies their sex, even if it is through correction. The things you identify in your brief is the harms. Wouldn't that still cause some of those harms? In other words, I think it was Ms. Gore that you identified that applied for a job. Just tell me if I'm wrong. That's correct, it's Ms. Gore. So if there's a scratch out, wouldn't the harm still be there? Some of the harm would still be there. The dignitary humiliating harms pertaining to not being able to furnish an identity document that accurately reflects who she is or any of our plaintiffs would still be corrected even if the strike out were not included under a relief on their equal protection, which we would argue that it should. Can I ask you, is that a product of... And maybe I'm thinking about this wrong. To me, that seems like a product of the disclosure requirement and not the birth certificate. In other words, if I say when you apply for a job, it often provides something, a form of proof, right? You can provide a driver's license, passport, whatever. If it is a birth certificate only, the counselor that you identify in your brief maybe, isn't that a product of the disclosure requirement, not the birth certificate itself that's causing the harm? It is both, Your Honor. We would argue that both having to furnish it to prove your identity in a manner that inaccurately portrays who you are causes harm, but also having to have a birth certificate that inaccurately portrays who you are itself causes harm. It communicates to the person that the state doesn't recognize them for who they are. In this case, transgender women, the four transgender women that we represent, that the state refuses to recognize in that sense. So I have another question about your theory of the case. Is your theory of the case that if the Equal Protection Clause, Due Process Clause gives you this right, is self-designation all that's required? Because, I mean, the states are all over the map in how they treat this. Some ask for proof of a sex change. Others will ask for proof of treatment. Others just a doctor's note, and others just self-designation. What's your theory? Your Honor, we would argue that to the extent that for transgender people it doesn't recognize their sex identification, that is the theory of the case. To the extent that there are barriers imposed. So you self-designate. In other words, it just requires the individual to go to the state and say, I'm transgender, female, and a story. No requirement of medical treatment or a doctor's note. Would you be objecting if the state had a procedure and you needed some sort of medical certification? So, Your Honor, in this regard, there have been, for example, medical certifications, for example, to confirm that somebody does suffer from gender dysphoria and this is their gender identity. Some states have required some steps with regards to their gender transition, particularly medically. We have challenged some of those restrictions successfully in North Carolina. I'm trying to get a clear answer. I just want to get the answer first, and then we'll see if there are alternatives. As I understand it, there are 11 states that say self-designation is all you need. Correct. And I took that from your briefs to be your theory, but I just wasn't sure. Self-designation, there could be also verification of that designation, whether it is through a medical provider. That is required in some other states as well. I'm asking your theory of the Constitution. We would argue that the self-recognition of one's identity is what is required here. Okay. Right. That's what I thought. Yes. But ultimately, here, what we're seeing is, going back to the point about what is actually at stake, it is not the vital statistics file. It is not the original birth record. It's the birth certificate furnished for identity. And it is only transgender people who are prohibited from correcting that document to reflect their identity. So we told the parties we would ask a little bit about kind of the concept of government speech here. And the way this looks like government speech is it is a government record, right? I mean, it's their record, and we know at birth there are lots of reasons for keeping these statistics. How does that interplay with your equal protection due process claims? So, Your Honor, with regards to government speech, we would argue that Short-Lift identifies particular factors that come into play. The Supreme Court, for example, did instruct in Natal that courts should exercise great caution in expanding the doctrine of government speech, otherwise it's susceptible to misuse. But here, those factors in Short-Lift in particular pertain to the history of the expression at issue, the public's likely perception of who is speaking, and the extent to which the government has controlled the expression. We would argue that each of those factors goes to show that this is not pure governmental speech in any way, but rather it pertains to the ability of people to be identified and provide identity of who they are in a government-provided document. I mean, I took from your briefing to concede that it's okay to have the birth certificates premised on biological sex. I took that to be implicit in how you've argued the case, that it's okay as a matter of government speech, government document, to have a question that is answered with biological sex at birth. Am I right about that or not right about that? No, Your Honor. We would say that here, first of all, the court did not decide what biological sex is for purposes of deciding this case. No, no, no. I'm talking about Tennessee. I'm not talking about the district court decision. Tennessee, well, let's just, any state, let's just, Ohio, for example. Is Ohio allowed as a matter of government records to say, when we have a birth, we're going to say time, date, doctor, city, and biological sex? Are they allowed to do that? Because I was taking you to say that was okay. It was the amendment policy that was not okay. I understand your question now, Your Honor. I got trampled over a little bit with the terminology of biological sex. Okay. So to the extent that here the use of a proxy at the time of birth is used to make an informed guess as to a person's sex identification through external genitalia, we don't dispute that that is, we don't argue that that is unconstitutional. Okay. But that is an informed guess. And ultimately, that proves to be right about 98% of the time, but wrong when it comes to certain people. Just so I understand this, maybe a different hypo that will take us out of that. Think about, let's say a father and mother disagree on a baby's name. And the law says we just accept the mother when there's disagreement, the mother's name, and put it down. Is there an equal protection challenge there? Well, Your Honor, I guess I would have to ask who is, equal protection challenge as to whom? The father's challenging the law. Mother trumps. Well, in those circumstances, I would argue that there's a plausible equal protection argument. So every governmental record can be challenged in some sense? Well, Your Honor, I believe that would have to do with disparate treatment as to sex with regards to who is given deference with regards to a baby's name. But that's my point. If the government keeps records, can you always challenge it? Can you challenge, I hate to use this terminology, it's just something, like a police investigative report. If they list biological sex, can you go in and challenge it? Your Honor, I think, I'm not certain, Your Honor, but I would argue that that misconstrues the document at issue here. It's not the mere fact that it is a government record. It is a government record that is furnished for purposes of providing identity. And it seeks to communicate, and it does communicate, going back to the government's speech question, it is perceived to communicate the person's identity, how they identify. It doesn't communicate how the government identifies you. It communicates how you identify. That is, in part, why name changes are also permitted. Would it be unconstitutional if the document specifically said at birth, and it used the phrase biological sex? Is that by itself unconstitutional? So, Your Honor, I want to parse that out and answer in two ways. First, I believe with regards to biological sex, I'll just push back on the notion that biological sex is exclusive of gender identity. Our complaint actually does document that. That's precisely why I'm asking the question. I'm trying to figure out, I came to the case thinking this was a dispute about the amendment policy. It is. And I'm starting to appreciate that, no, maybe that's wrong, that you would challenge this if the birth certificate said the phrase biological sex. And I'm getting the sense you might challenge that. Well, no, Your Honor. It goes to the amendment policy. If a transgender person is still prohibited from correcting that to reflect their identity. Okay, so the state could say, much as you think that's not the best way to think about it, I'm not meaning to disagree with you. But this gets back to government speech. But a state could say biological sex at the time of birth without having a problem if they had an amendment policy that complied with equal protection due process. Is that an accurate way of thinking about it? In other words, it says biological sex, but they have an amendment policy that acknowledges gender dysphoria and gender identity, which might be different from biological sex. We would argue that to the extent that a transgender person is prohibited from correcting that designation. In my case, they get to. In that designation, then, Your Honor, I don't believe there would be an equal protection problem. We're using biological sex at birth. So I just want to make sure we're on the same page. I'm saying the birth certificate says it uses the phrase biological sex. It's whatever, male, female. But then it has an amendment policy. That would not violate equal protection and due process. We would argue that it does not, Your Honor. In part, I would argue that it does not because we, as alleging the complaint, understand, and this would be a matter of factual determinations that would need to be made on an expert testimony basis and the like. There are multiple sex-related characteristics, all of which have a biological component to them. Gender identity is one of them. And so to the extent that it says biological sex and it permits the amendment for transgender people, then it wouldn't raise equal protection problems, Your Honor. What would happen with your case if, in a state, the state policy is just like Tennessee's, except, let's just say, in that state, driver's licenses are usable for every government benefit, every possible benefit. In other words, there is no setting in which you have to produce the birth certificate to get a job, get a benefit, get Social Security. You could always use a driver's license. And in my hypothetical, that driver's license recognized the possibility of amendment to acknowledge one's gender. I don't believe that would cure the entirety of the problem, Your Honor. What would be left is what I guess I'm… First of all, for somebody that is born in Tennessee but lives in another state, that it would pose problems. And ultimately, one requires a birth certificate in order to be able to obtain a passport. So there will still be instances, even in that situation of that hypothetical state, where the birth certificate would still have to be furnished in other circumstances as well. They would be less, but they would still exist. Boy, does that seem right, that Tennessee's responsible for other states' views? That seems odd to me. Well, Tennessee's responsible for its refusal to permit a person to correct the designation on their birth certificate and providing that document that inaccurately portrays who they are. But it's the other state that's denying something. It's the other state that's not allowing the driver's license. It's the other state that's actually concretely denying the individual something. That seems funny to me to put that at the foot of Tennessee. Your Honor, I understand I'm way over, so I want to make sure that I acknowledge that. Yeah, that's not a problem. I do want to, I do believe that it's still responsible for the state of Tennessee. Because it is the state of Tennessee that furnishes the identity document that ultimately is inaccurate for transgender people. And going back to government speech, Your Honor, even if this were government speech, which we articulate based on the factors from Shurtleff that it is not, then that would bolster our informational privacy claim under block. Because then it is the government, indisputably, that is actually causing the disclosure here. And therefore, invading or intruding into that informational privacy right that has been recognized under block. Your Honor, unless there are more questions at this time, I will stop. Okay, thank you very much. Thank you. You're from the state. Good morning. Good morning. Thank you, Your Honor, and may it please the Court, Matt Rice on behalf of the state. The Constitution does not require states to amend their birth certificates to include a person's gender identity. Tennessee does not somehow discriminate against transgender persons by merely maintaining an accurate record of a person's sex based off of external genitalia at birth. Plaintiffs do not allege that any Tennessee policy, as enacted or enforced, treats persons differently based off of their transgender status. They simply want Tennessee to convey a different message through their birth certificates. But that is not a viable equal protection theory. So if I can start by attempting to unpack what their disparate treatment theory is. Here, Your Honor, Tennessee's policies. Can I ask you a technical question which you may not know the answer to? But I thought going into this case that there was a significant contrast between the way the state treated birth certificates and the policy behind that versus driver's licenses, which I understood to allow someone to premise their sex based on their gender, right? So that's what I understood Tennessee to do. It has a picture, and that really seemed to lower the stakes and was also suggestive that the state did not have animus towards transgender individuals. As I understand it, there's a state trial court case with allegations that the state is about to change the driver's license policy. And that seems quite relevant to this case. So what is going on? Yes, Your Honor. I'll do my best to provide clarity. We were sued last week over our driver's license. We no longer allow people to change the sex designation on a driver's license based off of transgender status or gender identity to match gender identity. Last year, later... Is that an actual policy that's in place already or one about to be in place? It is in place, Your Honor. Last year, the Tennessee legislature enacted Section 1-3-105C, and it made clear that any time the term sex is used throughout the Tennessee Code, it is used to refer to a person's biological sex based off of external genitalia. And it specifically references the birth certificate as evidence of a person's biological sex based off of external genitalia at birth. And with that change in the law, there was a change in the policy from the Department of Transportation. And so we were criticized for not being consistent. We are now consistent in what Tennessee's documents reflect with respect to the sex designation on various government documents, Your Honor. Well, for what it's worth, I didn't really understand the consistency point. I thought it made some sense to have a record that was about births and the gender at birth. There's something to that. And current identification, above all, by police might like to pay attention. That's why they actually have a photo. Might want to pay attention to someone's gender because that's helpful in identification since most people walk around clothed. Yes, Your Honor. I'm quite puzzled by the whole thing, and it does seem like quite the switch. I'm sure I'll be in front of this court defending that policy. Does it apply to hunter's licenses, fishing licenses? It's across the board now. So I'm not sure about the specifics of that, Your Honor. The law was an across-the-board law that said when Tennessee uses the term sex, it uses that term. So presumably every ID now requires biological sex, is it? And no change based on gender. That's the policy. Presumably, Your Honor. Has anyone else done that in the country? I am unaware, Your Honor. Yeah, I don't think anyone has. I'm unaware. I don't know that that has anything to do, though, with the dispute that we have here. This policy has been on the books since well before 1977. It has been the consistent policy of the state of Tennessee that the birth certificate reflects a person's sex based off of external genitalia at birth. And plaintiffs, they don't dispute that that is what the sex designation conveys on a Tennessee birth certificate. In paragraph 216 of the complaint, plaintiffs admit that the sex designation listed on plaintiff's birth certificate, quote, conveys the state's message that sex is determined solely by the appearance of external genitals at the time of birth. So there's no dispute as to what Tennessee means on its birth certificate. It means sex based off of external genitalia at birth. And that means there is no disparate treatment here. Plaintiff's birth certificates are not inaccurate under Tennessee's usage of the term sex. They just do not reflect the information that plaintiffs wish they would reflect. And I do want to touch on the government. I'm sorry. As I understand it, plaintiffs are not asking for a change in the original, the record of birth. They're asking for the type of amended document or reissued document that you make available in other types of cases. So we're not talking about whether there's an accurate record of the birth. You're going to be keeping that under seal someplace. And you're talking about something that's an historical record that, I mean, counsel led with this, maybe it's just a theory, that these are not just historical records. They are documents that follow you your whole life, that you are asked to produce for, you know, on many occasions for different purposes. And it's supposed to be a record of your identity now. I mean, why do you, you know, yes, you can say, well, you give it for your passport to show you're an American citizen. But there are other things. There are people who ask for it for other things. They want to make sure you're not representing yourself as somebody you're not. And it stays with you for the rest of your life. So, you know, I feel that it's somewhat narrow to say that this is just a record of how you appeared at birth. Well, I guess a couple points, Your Honor. We likewise don't let people change the birth date on their birth certificate. And there have been cases, as Amicus pointed out, where someone came in, they said, I identify as younger or older than I am. I want you to change my age. We use the birth certificate to maintain an accurate repository of a person's sex based off of external genitalia at birth. And perhaps there are different policy rationales for why Tennessee could consider issuing birth certificates with a person's gender identity and keeping another birth certificate under seal. But that's not actually an argument that Tennessee has violated the Equal Protection Clause or that someone has a substantive due process right to demand that the state take that policy approach. So what I'm just trying to make sure I'm understanding what the policy of the state is now that you're trying to be consistent. If someone has a sex change with driver's licenses, you would then be able to change the sex designation or not? Your Honor, I'd have to go look. External genitalia, et cetera. I don't know exactly what the law says. I believe, again, because this happened last week, it is not the case in front of this court. But I believe the law says that the driver's license includes. Just to make sure you understand that I'm not just giving you a hard time. It is relevant what the state's interest is and whether it's being hypocritical. I'm sorry. Your Honor, you can file amended briefs and so forth. But you didn't tell us this. We found this out on our own. And it's a very serious case. And, you know, knowing the state is suddenly switching on something, you should not be surprised to hear questions about it. And I don't think the answer is it's not this case. You can try that if you want. It's not satisfying to me. Yes, Your Honor. If I could just try to explain why I don't think that the switch affects the rationales that we've maybe put forward to the court in terms of what the justifications for this law were. So we put forth four justifications. One is the interest in ensuring the accuracy and integrity of records that the state is certifying and the information thereof. Two, we said that this helps promote public health and research efforts. And we do use birth certificates. Our agencies are able to combine the information into a statistical data set that is used for research purposes. So, for example, maternal health. All of this is designed to show it's not animus. Everything about the policy change a week ago undermines that argument. It doesn't prove it is animus, but it does undermine it. I don't think that a change by the legislature in 2023, late 2023, indicates that there was... Why shouldn't it be obvious then if there's been, say, a biological sex change, change to the genitalia, you would be able to change a driver's license, for example. That is the norm. The norm traditionally in changing whether it's birth certificates or other identifications was this is how this all started in the 60s. If you had evidence of a sex change, reassignment surgery, they let you change certain things, whether it was birth certificates, driver's licenses, other identifications. And that's why it's highly material how this all plays out. Yes, Your Honor. And I'm not attempting to dodge the question. I'm trying to provide the answers with the information that I have on this, Your Honor. But I guess my fundamental point is that... All of your reasons for why the birth certificate should focus on biological sex I think are very legitimate. I think they're beyond reproach when it comes to the Constitution. The only risk is that this is a suspect class because of animus towards this group. And the recent change is putting you in a tricky spot, if you ask me, particularly if you happen to be the only state in the country that has this policy. Your Honor, I don't think that a policy enacted in 2024 could show that this policy, which we've had since the 1960s, was enacted with animus. So I guess that's the... I recognize there has been a recent change, and perhaps that leads to an argument, which I'm sure I will have in front of this Court, as to whether the driver's license change in policy was stemmed by animus. But this policy has been in place for decades. There is no indication that when it was enacted or adopted, back in I believe it was the 1950s or the 1960s at least, that there was any animus driving this law. It is not done for an animus-based purpose. This has been the longstanding policy of Tennessee, and I don't know that a recent change, while that may cast doubt on the changes that have been made in 2023 or 2024, can say anything about a policy that has preexisted. They can't somehow impute animus from something done in 2024 to a policy that we had since the 1960s. So that is why I don't know that the recent enactment of the law changes anything with respect to the policy before this Court, and I'm not trying to just say it's a different case. What I'm trying to say is it doesn't inform this Court's understanding of whether this policy, which has been on the book for decades, has any animus underlying it. And we don't think that it does. This Court in L.W. said that animus doesn't require courts to look into the subjective motivations of legislatures. It asks whether there is any rational justification for this law, and we think there are numerous rational justifications to support the Tennessee law. I just want to go back to this concept of keeping the original as is in your files. Why aren't all those policies served by having that original birth certificate reflecting the sex at birth? Why aren't the policies served? Yes, you've told us the policies that are served by not changing them, and I'm asking you why aren't all those policies equally served by keeping the original on file? Well, I think it would create, for one, practical difficulties. One, it would create an administrative burden. Two, one of our rationales that we used here was that the birth certificate is used as evidence of a person's biological sex at birth based off of ex-surgeon Atalia for various programs, sports programs, for example, bathrooms programs. So people would be able to, if they have an amended birth certificate that has no reflection that it has been amended whatsoever, it would undermine those sex-separated sports and sex-separated bathrooms policies that already exist in the law. So that's one example. I do think there is, the state is certifying the accuracy of this information, and this is a state document. I do want to, if I can briefly, I know I'm running low on time, but I do want to touch on the government speech issue because I do think that is fundamentally what they're asking for here. They are not really arguing that we treat transgender people differently. They just want us to convey a different message. And this court and Freedom From Religion Foundation recognize in an opinion by Chief Judge Sutton that the Equal Protection Clause is not a basis for forcing the government to convey your preferred message. This court made the same holding in Nudo Child No. 1 versus Congress of the United States. Can the government put whatever name they want on the doc? I don't know that that's been challenged, but I don't know that every aspect of the birth certificate has to be considered government speech. You can have some aspects of a government document. This has been disputed in license plates quite a bit. Some people say that the specialty design aspect of the license plate is government speech from the Supreme Court's decision in Walker, but that other aspects of the license plate are not, in fact, government speech. So I don't know that the fact that the name may not be government speech says anything about whether the sex designation is. And can I ask you a substantive due process question, which is you point out the age and people asking to change their age, but under Block isn't sex unique? And how do you deal with Block then? Well, Your Honor, I think Block fundamentally rested on a different fundamental right. Block recognized a fundamental right to privacy in one's sex life. And rightly or wrongly, that has a long pedigree in Supreme Court precedent. The Supreme Court has recognized a substantive due process right in contraception for a long time abortion. It got rid of sodomy laws. It has maintained a spear around a person's sex life. But a person's transgender status does not tell us anything about their sex life. It doesn't tell us their sexual preferences, their sexual activities. This court would have to extend the fundamental right that was recognized in Block and recognize a new fundamental right to privacy and gender identity that has no historical support whatsoever. Your Honor, if I could make one final. We've asked a lot of questions. Go ahead. If I could make one final just brief point on the government speech issue. My friend on the other side suggests that this is not government speech, but their own complaint repeatedly refers to this as, quote, the state's message that sex is determined by external genitals at birth. That's in paragraphs 216, 98, 119, 145, and 168. And if there are no further questions, we would ask that this court affirm the judgment below. All right. Thank you very much. Thank you, Your Honor. I appreciate it. Rebuttal. Thank you, Your Honors. Briefly just turning to the point about Block, Your Honors, I would note that that's a very narrow reading of Block that is inconsistent with this. But we have read it narrowly. Yes, Your Honor, but this court has read Block to speak of the aspects of one's sexuality and family life both in Lambert and Soon. And the cases that were cited by Block included, for example, Suniga, which while in that circumstance didn't find that the informational privacy right was violated, it did discuss medical information to be implicating that fundamental informational privacy right. And it also cited Mangos v. Pena, which specifically distinguished information pertaining to a conviction of drugs to any aspect of personal identity, which under prevailing precedent is entitled to constitutional protection. Your Honor, here there's no question that being transgender and the decision to disclose that is a highly intimate personal matter. And that has been recognized as such by the Second, Third, and Tenth Circuits in Powell v. Shriver, in Sterling, and in Leiser. And so here the birth certificate forces the disclosure of plaintiff's transgender status. As to the justifications, Your Honor, none of the justifications can rationally be tied or explained with the policy. All of them rely on the vital statistics files and original birth record. The public health research that is specifically reliant on the vital statistics files, nothing about this case would affect that. And by the way, just on that last point, there's no duty of the state or for that matter the national government to update records? So in other words, 2023 you have a certain number of boys, girls born. You learn later on that no gender has changed. Does your theory of the case require updating on that? Or is that a historical fact that you can leave alone? I believe as to the vital statistics files, it would be a historical fact of how people were assigned at birth. And that can be left alone. It's not affected by the birth certificate here. It's not a big jump to use the same statistic, and I think historically it has for the number of men and women alive. So I'm trying to figure out, is that something historically that is required changing? And it would, Your Honor, to the extent that it doesn't include for the amendment, which going to the, I think tying this to the point about administrative burden here, there's no administrative burden. And we know when people's markers are corrected. If you get the relief you're asking for, you not only amend the birth certificate, but you really would have to update the national records. Well, the vital statistics files does reflect when a correction is made, but it doesn't change the underlying information, right? Like it shows the sex at birth when it shows it was corrected to X. And we know that because the state does this for people born with ambiguous genitalia. And that speaks also to the equal protection problem here. The state is not, as much as they want to say that the birth certificate conveys only the designation based on external genitalia, we know that that is just simply not true. We know that that is untrue because people born with ambiguous genitalia are permitted to correct the sex designation on their birth certificate later in life on factors other than genitalia. Whether that be their phenotype after they start a puberty, but ultimately it is tied to their identity. And that's when the change happens. Another question, I hope you'll give me the benefit of the doubt on this, because it just may be wrongheaded, but I'm just trying to make sure I'm understanding it. It isn't obvious to me that everybody that's transgender would want to change their birth certificate. Because it's possible, that's the proof of, that is the true proof of your identity. In other words, the fact that you present differently from your biological sex. So the way this would work, if you got relief, would be it would turn on whether the person seeks it. So it really is just like a name change. You just, if you don't seek the name change, the same name stays there. That document is there, you can use it however you wish, and it would be the same here with sex. If you want to keep it the way it is, that's the way it is, and you can use it how you wish. Is that how it would work? Yes, Your Honor, but to the extent that not every person is in a position to socially transition to be able to do so. So, for example, those may be circumstances in which somebody may not seek that correction. But to the extent that the relief doesn't affect the whole of the people that it prohibits, that's no different that in VMI not every woman was going to apply for admission into the Virginia Military Institute. But it was still sex discrimination. Just because the policy may benefit or target a subgroup, it doesn't mean that it is not discriminating against the class as a whole. But for that, Your Honors, thank you for your time and for questions. All right, thanks to both of you for your helpful briefs and for your arguments, for answering our questions, which we always appreciate. Thank you so much. The case will be submitted, and the clerk may call the next case.